ANNE M. BEVINGTON (SBN 111320)
TINO X. DO (SBN 221346)
SALTZMAN & JOHNSON LAW CORPORATION
1141 Harbor Bay Parkway, Suite 100
Alameda, CA 94502
(510) 906-4710
abevington@sjlawcorp.com
tdo@sjlawcorp.com
Attorneys for Plaintiffs Automotive Industries Pension
Trust Fund et al.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUTOMOTIVE INDUSTRIES PENSION TRUST FUND, JAMES H. BENO, Trustee, TOM DILLON, Trustee, DON CROSATTO, Trustee, JOHN DiBERNARDO, Trustee, STEPHEN J. MACK, Trustee, RICH MORALES, Trustee, RYAN THIBODEAU, Trustee, and JIM SCHWANTZ, Trustee, | Case No. **COMPLAINT** |
| Plaintiffs, | |
| v. | |
| PEARSON AUTOMOBILE COMPANY, INC., a Delaware corporation, DBA PEARSON BUICK GMC, DBA PEARSON BUICK PONTIAC GMC, and DBA PEARSON OLDSMOBILE PONTIAC GMC, and DOES 1 – 10, | |
| Defendants. | |

///

///

///

///

///

///

///

- 1 -                                                 **COMPLAINT**

**INTRODUCTION**

This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C §§ 1001-1461 (1982).   In order to protect plan participants and the Federal Pension Benefit Guaranty Corporation, effective September 26, 1980, Congress created withdrawal liability for employers that withdraw from multiemployer pension plans. Due to the importance Congress attributed to those goals, it included special provisions not generally available to creditors to ensure that withdrawal liability could actually be collected.

Under ERISA §4001(b)(1), 29 U.S.C. §1301(b)(1), all trades or businesses under common control are to be treated as a single employer.   ERISA also contains a mandatory arbitration provision if an employer wishes to challenge the withdrawal liability determination.   To make such a challenge, an employer must request review within ninety (90) days from receiving the notice of the withdrawal liability assessment pursuant to ERISA §4219(b)(2), 29 U.S.C. §1399(b)(2), and any dispute concerning the pension plan's determination of withdrawal liability must be resolved through arbitration timely initiated under ERISA §4221(a), 29 U.S.C. §1401(a).

ERISA §4219(a), 29 U.S.C. §1399(a), requires an employer to provide the pension plan with all information the plan reasonably determines to be necessary to enable the plan sponsor to comply with the requirements of Title IV of ERISA, including the determination and collection of withdrawal liability.

Defendant Pearson Automobile Company, Inc., a Delaware corporation, dba Pearson Buick GMC, dba Pearson Buick Pontiac GMC, and dba Pearson Oldsmobile Pontiac GMC ("Pearson") was a participating employer in the Automotive Industries Pension Trust Plan ("Plan").   In or about June 2019, Pearson ceased operations and withdrew from participation in the Plan, thereby triggering the Plan to assess withdrawal liability against Defendant Pearson and all members of its controlled group for the sum of $1,015,909.00 under ERISA §4203, 29 U.S.C. §1383.   By letter dated June 26, 2019, Plaintiffs notified Defendant Pearson and all members of its controlled group of the assessed withdrawal liability.   On August 19, 2019 and updated on September 4, 2019, Plaintiffs notified Defendant Pearson and its controlled group in writing that

**COMPLAINT**

1  because Defendant Pearson had ceased operations, there was a substantial likelihood that it would
2  be unable to pay its withdrawal liability and thus, the Plan accelerated the entire unpaid
3  withdrawal liability.

4       Defendant Pearson did not request review of the assessment or initiate arbitration.  As of
5  the filing of this Complaint, Defendant Pearson is in default on the outstanding withdrawal
6  liability.  Plaintiffs therefore seek a money judgment against Defendant Pearson and each member
7  of its controlled group for an award of the entire assessed withdrawal liability less any credits for
8  recoveries received prior to judgment, plus interest, liquidated damages, attorneys' fees and costs.
9  Plaintiffs further seek injunctive relief against Defendant Pearson to provide adequate information
10 relating to any additional members of its controlled group under ERISA §4001(b)(1), 29 U.S.C.
11 §1301(b)(1), and any transactions to evade its withdrawal liability under ERISA §4212, 29 U.S.C.
12 §1392.

**PARTIES**

13

14      1.    The Automotive Industries Pension Trust Fund ("Plan") is an "employee benefit
15 plan" as defined in ERISA § 3(3), 29 U.S.C. § 1002(3), an "employee benefit pension plan" as
16 defined in ERISA § 3(2), 29 U.S.C. § 1002(2), and a "multiemployer plan" as defined in ERISA
17 §§ 3(37) and 4001(a)(3), 29 U.S.C. §§ 1002(37) and 1301(a)(3).  The Plan is jointly administered
18 and is maintained pursuant to the Labor Management Relations Act § 302(c), 29 U.S.C. § 186(c).

19      2.    Plaintiffs James H. Beno, Tom Dillon, Don Crosatto, John DiBernardo, Stephen J.
20 Mack, Ryan Thibodeau, Rich Morales, and Jim Schwantz are each members of the Automotive
21 Industries Pension Trust Fund Board of Trustees (collectively the "Trustees").  Plaintiff Trustees
22 are "fiduciaries" with respect to the Trust as defined in 3(21)(A) of ERISA (29 U.S.C. §
23 1002(21)(A)), and are collectively the Board of Trustees' "plan sponsor" within the meaning of
24 3(16)(B)(iii) and 4001(a)(10)(A) of ERISA (29 U.S.C. §§ 1002(16)(B)(iii) and 1301(a)(10)(A)).

25      3.    The Trust and the Trustees are herein jointly referred to as "Plaintiffs."

26      4.    Defendant Pearson is an active Delaware corporation with its principal place of
27 business located at 1176 W. El Camino Real, in Sunnyvale, CA 94087.  It was an employer within
28 the meaning of ERISA §3(5), 29 U.S.C. § 1002(5), and National Labor Relations Act ("NLRA")

§2(2), 29 U.S.C. §152(2), and was engaged in an industry affecting commerce within the meaning of ERISA §§3(11) and (12), 29 U.S.C. §1002(11) and (12).

5.     Defendants DOES 1 through 10 are entities and/or other persons that are within the same controlled group as Defendant Pearson under ERISA § 4001(b)(1), 29 U.S.C. § 1301(b)(1). Plaintiffs presently do not know the identities of such entities or persons. Plaintiffs are using fictitious names for the Defendants because Plaintiffs are unable to ascertain their true identity at this time.  Pursuant to Fed. R. Civ. Proc. 15(a), Plaintiffs will amend the Complaint to add the true name of the additional defendants once their identities are discovered.

**JURISDICTION AND VENUE**

6.     Jurisdiction is conferred upon this Court over the claims asserted by the Plaintiffs by virtue of ERISA §§4301(c) and 502(e)(1) & (f), 29 U.S.C. §§1451(c) and 1132(e)(1) & (f). Plaintiffs seek to enforce the provisions of ERISA and the terms of the Plan, redress Defendant Pearson's violations of ERISA, and all other appropriate legal or equitable relief under ERISA.

7.     Venue is conferred upon this Court by ERISA §§4301(d) and 502(e)(2), 29 U.S.C. §§1451(d) and 1132(e)(2).  Where an action is brought under ERISA §§4301 and 502, 29 U.S.C. §§1451 and 1132, in a district court of the United States, it may be brought at Plaintiffs' discretion, in the district where the Plan is administered, where the breach took place, or where a defendant resides or may be found.  Process may be served nationwide in any district where a defendant resides or may be found.  The Plan, on whose behalf the Trustees brings this action, is administered in this district at its principal place of business in Dublin, California. Thus, jurisdiction and venue are properly grounded with this Court.

**INTRADISTRICT ASSIGNMENT**

8.     Assignment to the San Francisco/Oakland Division is appropriate pursuant to Civil Local Rule 3-2(d) because a substantial part of the events and omissions giving rise to the Plaintiffs' claims occurred in Contra Costa County and Alameda County, California, and where the Plan is administered.

**FACTUAL ALLEGATIONS**

9.     Defendant Pearson was a participating employer in the Plan pursuant to a collective

bargaining agreement ("Bargaining Agreement") with the Machinists Automotive Trades District Lodge No. 190 of Northern California for and on behalf of Local Lodge 1101, International Association of Machinists and Aerospace Workers ("Union").  The Union is a labor organization as defined in NLRA §2(5), 29 U.S.C. §152(5), that represents employees in an industry affecting interstate commerce.  Defendant Pearson was obligated to and did make contributions to the Plan on behalf of its employees that were covered under that Bargaining Agreement.

10.     At all relevant times, Defendant Pearson did business as an automobile dealership operating at 1176 W. El Camino Real in Sunnyvale, California.

11.     In or about June 2019, Defendant Pearson ceased operations and withdrew from participating in the Plan, thereby making a complete withdrawal under ERISA §4203, 29 U.S.C. §1383.

12.     Plaintiffs are informed and believe that Defendant Pearson is out of business and its assets have been liquidated and/or sold following the cessation of its operations in June 2019.

13.     By written notice dated June 26, 2019 ("Notice of Assessment"), Plaintiffs notified Defendant Pearson and all identified members of Pearson's controlled group of the withdrawal liability assessed against them pursuant to ERISA §§4201-4203, 29 U.S.C. §§1381, et seq. Specifically, the Plan notified Defendant Pearson of the following in the written notice which is attached hereto as **Exhibit 1,** and incorporated herein by this reference:

(a)     Defendant Pearson's assessed withdrawal liability was $1,015,909.00, payable in one lump sum on or before July 30, 2019. or in 80 quarterly installment payments as follows:

| | |
|---|---|
| $21,643.00 | July 30, 2019 |
| $21,643.00 | September 31, 2019 |
| $21,643.00 | thereafter, last day of each succeeding calendar quarter |
| Final Payment | August 31, 2039 |

(b)     Defendant Pearson had the option of challenging the calculation of the withdrawal liability by requesting review within ninety (90) days from receiving the notice of the

**COMPLAINT**

withdrawal liability assessment as provided by ERISA §4219(b)(2), 29 U.S.C. §1399(b)(2).

(c)     Any dispute concerning a determination of withdrawal liability must be resolved through arbitration provided that the employer requested review and arbitration was timely initiated under ERISA §4221(a), 29 U.S.C. §1401(a).

14.     In order to initiate arbitration under section ERISA §4221(a)(1), 29 U.S.C. §1401(a), an employer must first request review of the assessed withdrawal liability.  Section VII of the Plan's Withdrawal Liability Procedures mirrors ERISA §4219(b)(2)(A), 29 U.S.C. §1399(b)(2)(A), which requires an employer's request for review to be in writing.   Neither Defendant Pearson, nor any member of its controlled group, timely requested review and therefore they are precluded from initiating arbitration, and the time to do so has expired.

15.     Neither Defendant Pearson nor any member of its controlled group made the required initial quarterly installment payment by July 30, 2019, or provided information regarding controlled group members.

16.     On August 19, 2019 and updated on September 4, 2019, Plaintiffs notified Defendant Pearson in writing that, pursuant to Section IX of the Plan's Withdrawal Liability Assessment Procedures (attached as Exhibit B to the September 4, 2019 written notice), ERISA §4219(c)(5)(b), 29 U.S.C. §1399(c)(5)(b) and PBGC §4219.31(b)(2), the entire unpaid withdrawal liability was accelerated, and the entire unpaid amount of $1,015,909.00, plus interest at the rate of 7% simple interest per year, was immediately due and payable, because Pearson had ceased operations, which indicated a substantial likelihood that it would be unable to pay its withdrawal liability. Plaintiffs also requested that Defendant Pearson provide information under ERISA §4219(a) regarding its ownership and financial records.  The written notice dated September 4, 2019 is attached hereto as **Exhibit 2** and incorporated herein by this reference.  As of the filing of this Complaint, Defendant Pearson submitted two payments of $21,643.00 each on September 19, 2019 and October 11, 2019.  However, these payments did not cure Defendant Pearson's default as the entire withdrawal liability was accelerated and immediately due, and thus Defendant Pearson remains in default under ERISA § 4219(c)(5), 29 U.S.C. § 1399(c)(5). Further, Defendant Pearson has failed to provide the requested information.

**COMPLAINT**

//

## FIRST CAUSE OF ACTION

**Against Defendant PEARSON and DOES 1 through 10 for Violation of ERISA § 4219, 29 U.S.C. § 1381: Request for Payment of Withdrawal Liability, Interest, Liquidated Damages, Attorneys' Fees and Costs**

17.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 16, above.

18.     In or about June 2019, Defendant Pearson made a "complete withdrawal" from the Plan as that term is defined in ERISA §4203, 29 U.S.C. §1383, et seq.

19.     On June 26, 2019, Plaintiffs assessed withdrawal liability against Defendant Pearson and all members of its controlled group, including the defendants named here as DOES 1 through 10, and thereafter, declared Defendant Pearson to be in default and accelerated payments pursuant to ERISA §4219(c)(5)(b), PBGC §4219.31(b)(2).

20.     Because neither Defendant Pearson nor any member of its controlled group timely requested review or initiated arbitration, the withdrawal liability is due in the amount and on the schedule set forth by Plaintiffs, pursuant to ERISA §4221(b)(1), 29 U.S.C. §1401(b)(1).

21.     To date, Defendant Pearson has submitted payments totaling $43,286.00 but Defendant Pearson and each other member within Defendant Pearson's control group remain default and are jointly and severally liable for the entire amount of the unpaid withdrawal liability under ERISA §§4219(c)(5) and 4001(b)(1), 29 U.S.C. §§1399(c)(5) and 1301(b).

22.     Accordingly, Plaintiffs seek judgment against Defendant Pearson for the entire amount of the unpaid withdrawal liability of $1,015,909.00, less credit for the $43,286.00 paid to date, plus accrued interest from the due date of the first delinquent payment pursuant to ERISA §§4219(c)(5) and 502(g)(2), 29 U.S.C. §§1399(c)(5) and 1132(g)(2).

23.     ERISA §4301(b), 29 U.S.C. §1451(b) provides that an action involving an employer's failure to timely make withdrawal liability payments shall be treated in the same manner as a delinquent contribution within the meaning of ERISA §515, 29 U.S.C. §1145.  Thus, Defendant Pearson is also liable for liquidated damages and costs, including reasonable attorneys' fees, pursuant to ERISA §§4301(b) and 502(g)(2), 29 U.S.C. §§1301(b) and 1132(g)(2).  The Plan provides for interest at the rate of 7% simple interest per year, and for liquidated damages in an

**COMPLAINT**

amount equal to the greater of 20% of the total unpaid withdrawal liability or double interest.

24.     Plaintiffs, therefore, seek a money judgment against Defendant Pearson for an award of the entire balance of the unpaid withdrawal liability less any credits for recoveries received before the time of judgment, plus interest, an amount equal to the greater of liquidated damages or interest, and costs, including attorneys' fees.

**SECOND CAUSE OF ACTION**
**Against Defendant PEARSON for Violation of ERISA § 4219(a), 29 U.S.C. § 1399(a):**
**Failure to Provide Required Information under ERISA**

25.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 24, above.

26.     In violation of ERISA §4219(a), 29 U.S.C. §1399(a), Defendant Pearson has failed to provide the Plan with all necessary information to enable the Plan to comply with the requirements of ERISA, including but not limited to information relating to the identities of all members of Defendant Pearson's controlled group under ERISA §4001(b)(1), 29 U.S.C. §1301(b)(1) and any transactions to evade or avoid Pearson's withdrawal liability under ERISA §4212, 29 U.S.C. §1392.

27.     The failure of Defendant Pearson to pay the withdrawal liability in accordance with ERISA §4219(c)(2), 29 U.S.C. §1399(c)(2), and provide requested information in accordance with ERISA §4219(a), 29 U.S.C. §1399(a) has caused the Plan to sustain loss of investment income and incur administrative and legal expenses.

28.     Defendant Pearson's failure to comply with the law has caused the Plan to suffer immediate, continuing, and irreparable injury, and Plaintiffs are without an adequate remedy at law.

29.     Due to Defendant Pearson's failure to provide sufficient information, Plaintiffs are required to name its unknown controlled group members and parties who engaged in transactions to evade its withdrawal liability as fictitious defendants until their true identities can be discovered.

30.     Thus, injunctive relief as prayed for below is proper.

**PRAYER**

WHEREFORE, Plaintiffs pray for the following relief:

**COMPLAINT**

1.    For a judgment providing that Defendant Pearson and DOES 1 through 10 are jointly and severally liable to immediately pay to Plaintiffs the following sums:

    (i)    The unpaid withdrawal liability of $1,015,909.00, less any credits for recoveries received before the time of judgment;

    (ii)    Interest at the rate of 7% simple interest per annum pursuant to ERISA §§4219(c)(5)-(6) and 502(g)(2), 29 U.S.C. §1399(c)(5) and (6) and 1132(g)(2);

    (iii)    Pursuant to ERISA §502(g)(2)(C), 29 U.S.C. §1132(g)(2)(C), liquidated damages equal to the greater of:

        (a)    An amount equal to twenty percent (20%) of the amount of unpaid withdrawal liability; or

        (b)    Double interest; and

    (iv)    Attorneys' fees and costs incurred by Plaintiffs in connection with this action as permitted by ERISA §§4301(e) and 502(g), 29 U.S.C. §§1451(e) and 1132(g).

2.    For injunctive relief ordering Defendant Pearson to provide all of the documentation and information requested by the Plan, including but not limited to information regarding all trades or businesses which are within Defendant Pearson's controlled group as defined in ERISA §4001(b)(1), 29 U.S.C. §1301(b), and any transactions to evade its withdrawal liability under ERISA §4212, 29 U.S.C. §1392.

3.    Such other relief as this Court deems appropriate.


Dated:    January 28, 2020            SALTZMAN & JOHNSON LAW CORPORATION


                              By:    /S/_____
                                 Tino X. Do
                                 Attorneys for Plaintiffs

# AUTOMOTIVE INDUSTRIES PENSION FUND



**4160 DUBLIN BOULEVARD SUITE 400 | DUBLIN, CA  94568-7756**
**TELEPHONE (800) 635-3105 | FAX (925) 588-7121**
**www.aitrustfunds.org**

*RETURN RECEIPT REQUESTED*
*VIA CERTIFIED MAIL*
*AND FIRST CLASS U.S. MAIL*

June 26, 2019

Pearson Automobile Company, Inc.
1176 W. El Camino Real
Sunnyvale, CA 94087

Dear Employer,

## I.    Withdrawal Liability Due

In July 2019, Pearson Automobile Company, Inc. withdrew from the Automotive Industries Pension Plan ("the Plan"), a multiemployer defined benefit pension plan.  ERISA Section 4202 requires that when an employer withdraws from a multiemployer plan, the Board of Trustees of the Plan shall determine the amount of withdrawal liability, notify the employer of the amount, and collect the amount due. Under ERISA Sections 4001(b)(1) and 4201, a withdrawn employer (including all members of its controlled group) is liable to the Plan for the amount of its withdrawal liability.  All deadlines related to this assessment are applicable unless the Plan sends a subsequent notice of assessment that may modify the deadlines

Under ERISA Section 4211(b), withdrawal liability is based on a plan's unfunded vested benefits allocable to the employer.  Reductions in benefits made under a rehabilitation plan must be disregarded when determining the plan's unfunded vested benefits for withdrawal liability purposes. The Plan adopted the simplified method for determining withdrawal liability under this requirement.  Please refer to the PBGC Technical Update 10-3 issued July 15, 2010 for further information.   Please also refer to the enclosed calculation sheet for the values of the Fund's Unfunded Vested Benefits as of  December 31, 2018 the Affected Benefits pools and Pearson Automobile Company, Inc.'s share of the Unfunded Vested Benefits and Affected Benefits Pools.

At this time, the December 31, 2018 Unfunded Vested Benefits, item (7) of the calculation sheet, and the 2018 adjusted total employer contributions, a component of item (16) of the calculation sheet, are not available and have been estimated. These will be revised once the information is available.  The Automotive Industries Pension Trust Fund Office reserves the right to revise the assessment if necessary after the 2018 data becomes available.

Pearson Automobile Company, Inc. and each member of its controlled group jointly and severally, are hereby assessed a withdrawal liability of **$1,015,909.00** payable in one lump sum on or before July 31, 2019 or in 80 quarterly installments, including interest, as follows:

Exhibit 1 - p.1

| Amount of Installment | Due Date |
|---|---|
| 1. $21,643.00 | July 30, 2019 |
| 2. $21,643.00 | September 31, 2019 |
| 3. $21,643.00 | thereafter, last day of each succeeding calendar quarter |
| 4. Final Payment | August 31, 2039 |

Please note that the quarterly payments are calculated based on the annual payment determined under ERISA Section 4219(c)(1)(C). The annual payment calculated under this subsection is $86,573.00.

Installments that are not paid on time bear interest at the rate of 7.00% simple interest per annum.

For further information about the calculation of the withdrawal liability, please see the attached Calculation of Withdrawal Liability Assessment.

Please make payment by check payable to: "Automotive Industries Pension Trust Fund" mailed to the following address:

> Automotive Industries Pension Trust Fund
> P. O. Box 55516
> Hayward, CA  94545

II.      Appeal Procedure

Pursuant to ERISA Section 4219(b)(2), within 90 days after receipt of this letter, Pearson Automobile Company, Inc. may ask the Board of Trustees to review any specific matters relating to the determination and schedule of payments, identify any inaccuracy in the determination of the amount of the unfunded vested benefits allocation, and may furnish additional relevant information to the Board. Please note that under ERISA Section 4219(c)(2), withdrawal liability is payable in accordance with the above schedule notwithstanding any request for review of the determination of the amount of the liability or schedule of payments.

Under ERISA Section 4221(a), any dispute concerning a determination of withdrawal liability must be resolved through arbitration. If you want to initiate arbitration you must do so in accordance with the American Arbitration Association Multi-Employer Pension Plan Arbitration Rules for Withdrawal Liability Disputes within the 60 day period after the earlier of 120 days after you make a request for review as described above, or the date the Board notifies you of its decision in response to your request. Please note that under ERISA Section 4219(d), withdrawal liability is payable in accordance with the above schedule even if arbitration is started.

Exhibit 1 - p.2

III.    Other Amounts Due

The amount of this withdrawal liability is separate and distinct from other amounts that may be owed by Pearson Automobile Company, Inc., including any amounts found due as a result of payroll audits.

Sincerely,

Charles W. Besocke
Third Party Administrator on Behalf
Of Automotive Industries Pension Fund

Enclosure

cc:     Jim Beno, Chairman of Automotive Industries Pension Fund
        Anne Bevington, Saltzman & Johnson Law Corporation

Exhibit 1 - p.3

Automotive Industries Pension Fund
Calculation of 2019 Withdrawal Liability Estimate

| | | |
|---|---|---|
| 1) Balance of 12/31/2008 Affected Benefits Pool (ABP) | $59,687,351.00 | |
| 2) Balance of 12/31/2009 ABP | $13,331,406.00 | |
| 3) Balance of 12/31/2010 ABP | $17,848,649.00 | |
| 4) Balance of 12/31/2011 ABP | $17,647,560.00 | |
| 5) Balance of 12/31/2012 ABP | $12,428,535.00 | |
| 6) Balance of 12/31/2013 ABP | $8,810,453.00 | |
| 7) Estimated 12/31/2018 Unfunded Vested Benefits (UVB) | $1,424,808,084.00 | |
| 8) Employer name | Pearson Automobile Company, Inc. | |
| 9) Employer number(s) | 04-1274505015 | |
| | 04-1274505515 | |
| 10) Contributions 2014 | $63,556.11 | |
| 11) Contributions 2015 | $62,685.46 | |
| 12) Contributions 2016 | $61,960.06 | |
| 13) Contributions 2017 | $57,171.43 | |
| 14) Contributions 2018 | $53,398.70 | |
| 15) 2014 - 2018 contribution total of employer - sum of items (10) - (14) | $298,771.76 | |
| 16) Estimated 2014 - 2018 adjusted contribution total of all employers | $105,195,550.00 | |
| 17) Employer share of 12/31/2008 ABP - item (1) times (item (15) / item (16)) | $169,521.00 | |
| 18) Employer share of 12/31/2009 ABP - item (2) times (item (15) / item (16)) | $37,863.00 | |
| 19) Employer share of 12/31/2010 ABP - item (3) times (item (15) / item (16)) | $50,693.00 | |
| 20) Employer share of 12/31/2011 ABP - item (4) times (item (15) / item (16)) | $50,122.00 | |
| 21) Employer share of 12/31/2012 ABP - item (5) times (item (15) / item (16)) | $35,299.00 | |
| 22) Employer share of 12/31/2013 ABP - item (6) times (item (15) / item (16)) | $25,023.00 | |
| 23) Employer share of estimated 12/31/2018 UVB - item (7) times (item (15) / item (16)) | $4,046,677.00 | |
| 24) Estimated allocated amount - sum of items (17) through (23) | $4,415,198.00 | |
| 25) De minimis amount | $0.00 | |
| 26) Estimated allocation - item (24) - item (25) | $4,415,198.00 | |

| 27) Ten plan years of contributory months | | | 3-year average |
|---|---|---|---|
| | 2009 | 217.00 | |
| | 2010 | 224.00 | |
| | 2011 | 240.00 | 227.0000 |
| | 2012 | 252.00 | 238.6667 |
| | 2013 | 248.00 | 246.6667 |
| | 2014 | 231.00 | 243.6667 |
| | 2015 | 226.00 | 235.0000 |
| | 2016 | 236.00 | 231.0000 |
| | 2017 | 203.00 | 221.6667 |
| | 2018 | 190.00 | 209.6667 |

| | |
|---|---|
| 28) Highest 3-year average annual months | 246.6667 |
| 29) Highest contribution rate during past ten years, ignoring Rehabilitation Plan increases after 12/31/2014 | $350.97 |
| 30) Annual payment - item (28) x item (29) | $86,573.00 |
| 31) Quarterly payment - item (30) / 4 | $21,643.00 |
| 32) Number of full quarterly payments (@ 6.50% interest) | 80 |
| 33) Estimated reduction in allocation (item 26) due to 20-year cap on payments | $3,399,289.00 |
| 34) Lump sum withdrawal liability assessment - item (26) - item (33) | $1,015,909.00 |

**SEGAL CONSULTING**

Exhibit 1 - p.4

Russell L. Richeda
Michele R. Stafford
Shaamini A. Babu
Brandie M. Barrows
Kimberly A. Hancock
Anne M. Bevington
Ana P. Hallmon
Allan D. Shuldiner
Sun M. Chang
Matthew P. Minser
Tino X. Do
Jonathan J. Sha
Luz E. Mendoza



**S & J**

SALTZMAN & JOHNSON
LAW CORPORATION

1141 Harbor Bay Parkway, Suite100
Alameda, CA 94502
(510) 906-4710
www.sjlawcorp.com

Warren H. Saltzman
(1925-1988)

Richard C. Johnson
(1942-2014)

**Paralegals**

Elise Cotterill
Nargis Shaghasi
Karen Andrade

September 4, 2019

**VIA CERTIFIED MAIL**
**(RETURN RECEIPT REQUESTED)**
**AND FIRST CLASS MAIL**
Mark J. Balestra                              Mark J. Balestra
Pearson Automobile Company, Inc.             Pearson Automobile Company, Inc.
97 Larch Dr.                                 3788 Sun Ridge Dr.
Atherton, CA 94027-2125                       Park City, UT 84060-8830

> **Re:   Automotive Industries Pension Plan and Pearson Automobile Company, Inc.**
> **Notice of Acceleration of Withdrawal Liability and**
> **Request for Information under ERISA § 4219(a)**

Dear Mr. Balestra:

This office represents the Automotive Industries Pension Plan ("the Pension Plan") regarding the assessment of withdrawal liability against your company Pearson Automobile Company, Inc. ("Pearson"), based on Pearson's withdrawal from the Pension Plan in or about June 2019. Pursuant to your letter dated June 4, 2019, Pearson ceased its operations as of June 28, 2019. In a letter dated June 26, 2019, a copy of which is enclosed, the Pension Plan notified Pearson, and each member of Pearson's controlled group, that it had assessed withdrawal liability in the amount of $1,015,909.00, payable in one lump sum on July 31, 2019 or in 80 quarterly installments of $21,643.00 beginning on July 30, 2019. A copy of the June 26, 2019 assessment letter is attached as Exhibit A.

<u>**NOTICE OF ACCELERATION OF WITHDRAWAL LIABLITY**</u>

Under ERISA § 4219(c)(5), in the event of a default, the plan may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made. A default includes any event defined in rules adopted by the plan which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability. Section 4219(c)(5)(B). Under Section IX of the Withdrawal Liability Rules adopted by the Plan, a copy of which is attached as Exhibit B, the following events, among others, are defined as a default: employer going out of business, employer's insolvency, employer's failure or inability to pay its debts as they become due, employer undergoing liquidation or dissolution, and an employer's statement that it is unable to pay. The Plan believes that some or all of these events of default have occurred, since Pearson has ceased operations, and no payment has been received for any of the withdrawal liability.

Exhibit 2 - p.1

P:\CLIENTS\AUTPF\W\Cases\Pearson Automobile Company\Correspondence\Pearson- Acceleration Notice 090419 new address.docx

**The Pension Plan hereby demands immediate payment of the entire amount of the withdrawal liability of $1,015,909.00, plus interest at the rate of 7% simple interest per year on that amount, running from July 31, 2019.  The amount due as of August 19, 2019, is $1,015,909.00 plus interest of $3,896.60, for a total of $1,019,805.60.  Interest continues to accrue in the amount of $194.83 per day for each day after August 19, 2019 that the liability remains unpaid.**

If Pearson fails to make immediate payment of the amount due, plus accrued interest, the Pension Plan may file a lawsuit in the United States District Court to collect the amount due, including interest, liquidated damages and all attorneys' fees and costs incurred by the Pension Plan in enforcing these statutory rights. Please immediately forward payment, made payable to the *Automotive Industries Pension Trust Fund,* to this office.

## REQUEST FOR INFORMATION

Pursuant to ERISA § 4219(a) an employer must furnish within 30 days of written request such information as the Pension Plan reasonably believes to be necessary to determine withdrawal liability matters. The documents and information to be provided are described on the attached Exhibit C. This information is necessary to enable the plan sponsor to determine the final amount of Pearson's withdrawal liability, notify the employer of the liability amount, and collect it, as required by ERISA § 4202. The Pension Plan may need to request additional documents in the future if necessary.

Please provide the requested documents and information by August 29, 2019. If you have any questions, please feel free to contact me.

Sincerely,

Tino X. Do

TXD/ns

Attachments:
A – June 26, 2019 Assessment Letter
B – Withdrawal Liability Procedures
C – Information and Document Request

cc:   Charles Besocke
      Wei Ma
      Jason Wong
      Miranda Zendejas

Exhibit 2 - p.2

# AUTOMOTIVE INDUSTRIES PENSION FUND



**4160 DUBLIN BOULEVARD SUITE 400 | DUBLIN, CA 94568-7756**
**TELEPHONE (800) 635-3105 | FAX (925) 588-7121**
**www.aitrustfunds.org**

June 26, 2019

*RETURN RECEIPT REQUESTED*
*VIA CERTIFIED MAIL*
*AND FIRST CLASS U.S. MAIL*

Pearson Automobile Company, Inc.
1176 W. El Camino Real
Sunnyvale, CA 94087

Dear Employer,

I.   <u>Withdrawal Liability Due</u>

In July 2019, Pearson Automobile Company, Inc. withdrew from the Automotive Industries Pension Plan ("the Plan"), a multiemployer defined benefit pension plan. ERISA Section 4202 requires that when an employer withdraws from a multiemployer plan, the Board of Trustees of the Plan shall determine the amount of withdrawal liability, notify the employer of the amount, and collect the amount due. Under ERISA Sections 4001(b)(1) and 4201, a withdrawn employer (including all members of its controlled group) is liable to the Plan for the amount of its withdrawal liability. All deadlines related to this assessment are applicable unless the Plan sends a subsequent notice of assessment that may modify the deadlines

Under ERISA Section 4211(b), withdrawal liability is based on a plan's unfunded vested benefits allocable to the employer. Reductions in benefits made under a rehabilitation plan must be disregarded when determining the plan's unfunded vested benefits for withdrawal liability purposes. The Plan adopted the simplified method for determining withdrawal liability under this requirement. Please refer to the PBGC Technical Update 10-3 issued July 15, 2010 for further information. Please also refer to the enclosed calculation sheet for the values of the Fund's Unfunded Vested Benefits as of December 31, 2018 the Affected Benefits pools and Pearson Automobile Company, Inc.'s share of the Unfunded Vested Benefits and Affected Benefits Pools.

At this time, the December 31, 2018 Unfunded Vested Benefits, item (7) of the calculation sheet, and the 2018 adjusted total employer contributions, a component of item (16) of the calculation sheet, are not available and have been estimated. These will be revised once the information is available. The Automotive Industries Pension Trust Fund Office reserves the right to revise the assessment if necessary after the 2018 data becomes available.

Pearson Automobile Company, Inc. and each member of its controlled group jointly and severally, are hereby assessed a withdrawal liability of **$1,015,909.00** payable in one lump sum on or before July 31, 2019 or in 80 quarterly installments, including interest, as follows:

| Amount of Installment | Due Date |
|---|---|
| 1. $21,643.00 | July 30, 2019 |
| 2. $21,643.00 | September 31, 2019 |
| 3. $21,643.00 | thereafter, last day of each succeeding calendar quarter |
| 4. Final Payment | August 31, 2039 |

Please note that the quarterly payments are calculated based on the annual payment determined under ERISA Section 4219(c)(1)(C). The annual payment calculated under this subsection is $86,573.00.

Installments that are not paid on time bear interest at the rate of 7.00% simple interest per annum.

For further information about the calculation of the withdrawal liability, please see the attached Calculation of Withdrawal Liability Assessment.

Please make payment by check payable to: "Automotive Industries Pension Trust Fund" mailed to the following address:

> Automotive Industries Pension Trust Fund
> P. O. Box 55516
> Hayward, CA 94545

II.     Appeal Procedure

Pursuant to ERISA Section 4219(b)(2), within 90 days after receipt of this letter, Pearson Automobile Company, Inc. may ask the Board of Trustees to review any specific matters relating to the determination and schedule of payments, identify any inaccuracy in the determination of the amount of the unfunded vested benefits allocation, and may furnish additional relevant information to the Board. Please note that under ERISA Section 4219(c)(2), withdrawal liability is payable in accordance with the above schedule notwithstanding any request for review of the determination of the amount of the liability or schedule of payments.

Under ERISA Section 4221(a), any dispute concerning a determination of withdrawal liability must be resolved through arbitration. If you want to initiate arbitration you must do so in accordance with the American Arbitration Association Multi-Employer Pension Plan Arbitration Rules for Withdrawal Liability Disputes within the 60 day period after the earlier of 120 days after you make a request for review as described above, or the date the Board notifies you of its decision in response to your request. Please note that under ERISA Section 4219(d), withdrawal liability is payable in accordance with the above schedule even if arbitration is started.

III.    Other Amounts Due

The amount of this withdrawal liability is separate and distinct from other amounts that may be owed by Pearson Automobile Company, Inc., including any amounts found due as a result of payroll audits.

Sincerely,

Charles W. Besocke
Third Party Administrator on Behalf
Of Automotive Industries Pension Fund

Enclosure

cc:    Jim Beno, Chairman of Automotive Industries Pension Fund
       Anne Bevington, Saltzman & Johnson Law Corporation

Automotive Industries Pension Fund
Calculation of 2019 Withdrawal Liability Estimate

| | | |
|---|---|---|
| 1) | Balance of 12/31/2008 Affected Benefits Pool (ABP) | $59,687,351.00 |
| 2) | Balance of 12/31/2009 ABP | $13,331,406.00 |
| 3) | Balance of 12/31/2010 ABP | $17,848,649.00 |
| 4) | Balance of 12/31/2011 ABP | $17,647,560.00 |
| 5) | Balance of 12/31/2012 ABP | $12,428,535.00 |
| 6) | Balance of 12/31/2013 ABP | $8,810,453.00 |
| 7) | Estimated 12/31/2018 Unfunded Vested Benefits (UVB) | $1,424,808,084.00 |
| | | |
| 8) | Employer name | Pearson Automobile Company, Inc. |
| 9) | Employer number(s) | 04-1274505015 |
| | | 04-1274505515 |
| | | |
| 10) | Contributions 2014 | $63,556.11 |
| 11) | Contributions 2015 | $62,685.46 |
| 12) | Contributions 2016 | $61,960.06 |
| 13) | Contributions 2017 | $57,171.43 |
| 14) | Contributions 2018 | $53,398.70 |
| | | |
| 15) | 2014 - 2018 contribution total of employer - sum of items (10) - (14) | $298,771.76 |
| | | |
| 16) | Estimated 2014 - 2018 adjusted contribution total of all employers | $105,195,550.00 |
| | | |
| 17) | Employer share of 12/31/2008 ABP - item (1) times (item (15) / item (16)) | $169,521.00 |
| 18) | Employer share of 12/31/2009 ABP - item (2) times (item (15) / item (16)) | $37,863.00 |
| 19) | Employer share of 12/31/2010 ABP - item (3) times (item (15) / item (16)) | $50,693.00 |
| 20) | Employer share of 12/31/2011 ABP - item (4) times (item (15) / item (16)) | $50,122.00 |
| 21) | Employer share of 12/31/2012 ABP - item (5) times (item (15) / item (16)) | $35,299.00 |
| 22) | Employer share of 12/31/2013 ABP - item (6) times (item (15) / item (16)) | $25,023.00 |
| 23) | Employer share of estimated 12/31/2018 UVB - item (7) times (item (15) / item (16)) | $4,046,677.00 |
| | | |
| 24) | Estimated allocated amount - sum of items (17) through (23) | $4,415,198.00 |
| 25) | De minimis amount | $0.00 |
| 26) | Estimated allocation - item (24) - item (25) | $4,415,198.00 |

| 27) | Ten plan years of contributory months | | 3-year average |
|---|---|---|---|
| | 2009 | 217.00 | |
| | 2010 | 224.00 | |
| | 2011 | 240.00 | 227.0000 |
| | 2012 | 252.00 | 238.6667 |
| | 2013 | 248.00 | 246.6667 |
| | 2014 | 231.00 | 243.6667 |
| | 2015 | 226.00 | 235.0000 |
| | 2016 | 236.00 | 231.0000 |
| | 2017 | 203.00 | 221.6667 |
| | 2018 | 190.00 | 209.6667 |

| | | |
|---|---|---|
| 28) | Highest 3-year average annual months | 246.6667 |
| | | |
| 29) | Highest contribution rate during past ten years, ignoring Rehabilitation Plan increases after 12/31/2014 | $350.97 |
| | | |
| 30) | Annual payment - item (28) x item (29) | $86,573.00 |
| | | |
| 31) | Quarterly payment - item (30) / 4 | $21,643.00 |
| | | |
| 32) | Number of full quarterly payments (@ 6.50% interest) | 80 |
| | | |
| 33) | Estimated reduction in allocation (item 26) due to 20-year cap on payments | $3,399,289.00 |
| | | |
| 34) | Lump sum withdrawal liability assessment - item (26) - item (33) | $1,015,909.00 |

## AUTOMOTIVE INDUSTRIES PENSION TRUST FUND

## WITHDRAWAL LIABILITY PROCEDURES

(Revised Effective for Assessment Letters Sent and for Requests for an Estimate of
Withdrawal Liability Received on and after April 1, 2014)

## GENERAL MATTERS

I.    Statutory Definition

    A.    Complete Withdrawal (ERISA '§ 4203(a))

        A complete withdrawal occurs when an employer (1) permanently ceases to have an obligation to contribute under the Plan, or (2) permanently ceases all covered operations under the Plan.

    B.    Partial Withdrawal (ERISA § 4205(a))

        There is a partial withdrawal by an employer on the last day of a plan year if for such plan year (1) there has been a 70% decline in an employer's contribution base units in each of a three-year testing period, or (2)(a) there is a cessation of the employer's contribution obligation under one or more but not all of the agreements under which it contributes and the employer continues to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required or transfers such work to another location, or (b) the employer ceases to have a contribution obligation at one or more but not all of its covered locations and continues covered work at such location(s).

II.    Plan's Duties (ERISA § 4202)

    When an employer withdraws from the Plan, the Plan shall

    A.    calculate the amount of the employer's withdrawal liability,

    B.    notify the employer of the amount of the withdrawal liability, and

    C.    collect the amount of the withdrawal liability from the employer.

## ASSESSING WITHDRAWAL LIABILITY

III.    Spotting Withdrawals

    The following parties should notify the Plan Office when an employer no longer has an obligation to contribute to the Plan:

    A.    <u>Business Representatives</u>. A business representative should notify the Plan Office when an employer no longer has an obligation to contribute, or when there has been a partial cessation of such obligation.

    B.    <u>Employers</u>. Employers should notify the Plan when they become aware that a contributing employer has ceased work requiring contributions to the Fund.

    C.    <u>Associations</u>. An association of contractors should notify the Plan Office if it is aware that an employer may no longer have an obligation to contribute.

    D.    <u>Plan Office</u>. At the end of each plan year the Plan Office shall prepare a list of employers who have had a 70% contribution decline. The Plan Office will also notify the appropriate local union and collection counsel when a contributing employer does not remit contributions for three consecutive months and attempt to determine whether a withdrawal has occurred.

IV.    <u>Calculation of Withdrawal Liability</u>

    If after determining the facts and consulting with the Plan's consultant and attorney if necessary, the Plan Office determines that there has been a complete or partial withdrawal, the Plan Office shall compile the necessary information and send it to the Plan's actuary for calculation of withdrawal liability. The Plan's actuary shall calculate the total amount of an employer's withdrawal liability and the amortized payment schedule and send it to the Plan Office.

V.    <u>Determination of Payments</u> (ERISA § 4219)

    A.    <u>Periodic Payments</u>. An employer's withdrawal liability shall be payable over a period of years, not to exceed 20, necessary to amortize the amount in level annual payments. ERISA § 4219( c)(1 )(A).

    B.    <u>Amount of Payment</u>. The amount of each annual payment shall be the product of (1) the average number of base units for the period of 3 consecutive plan years during the period of 10 consecutive plan years ending before the withdrawal in which the base units of the employer were the highest, multiplied by (2) the highest contribution rate at which the employer had an obligation to contribute during the 10 consecutive year period ending with the plan year in which the withdrawal occurs. ERISA § 4219(c)(1)(c).

    C.    <u>Quarterly Installments</u>. Each annual payment shall be payable in 4 equal installments due quarterly. ERISA §4219(c)(3).

VI.    <u>Assessment</u> (ERISA §4219(b))

    As soon as practical after an employer's withdrawal, the Plan Office will:

    A.    <u>Notification of Amount</u>. Notify the employer in writing of (1) the amount of withdrawal liability, and (2) the schedule for liability payments, and

    B.    <u>Payment Demand</u>. Demand payment in accordance with the schedule.

2

## COLLECTING WITHDRAWAL LIABILITY

VII.    Request for Review (ERISA §4219 (b)(2))

    A.    Review Request. No later than 90 days after the employer receives the notice referred to in VI, the employer may in writing:

        (1)    ask the Plan to review any specific matters relating to the determination of the employer's liability and schedule of payments; or

        (2)    identify any inaccuracy in the determination of the amount of the unfunded vested benefits allocated to the employer; or

        (3)    furnish any additional relevant information to the Plan.

    B.    Plan Response. After a reasonable review of any matter raised, the Plan shall notify the employer of:

        (1)    the Plan's decision;

        (2)    the basis of the decision; and

        (3)    the reason for any change in the determination of the employer's liability or schedule of liability payments.

    C.    Late Requests. Requests for review made more than 90 days after the date of assessment will not be honored.

VIII.    Payment According to Schedule (ERISA § 4219(b)(2))

    A.    Payments. Withdrawal liability shall be payable in accordance with the schedule determined under VII Above and this Section VIII.

    The first scheduled payment is due no later than the last day of the month following the month of the date of demand notwithstanding any request for review or appeal of the determination or amount. If payment is not made when due, interest on the payment shall accrue from the due date until payment is made. ERISA § 4219(b)(3). The rate of interest shall be 7% simple interest per annum. The second scheduled payment is due no later than the last day of the calendar quarter following the quarter in which the first payment is due. Subsequent quarterly payments are due no later than the last day of each following calendar quarter.

    B.    Prepayments. An employer shall be entitled to prepay the outstanding amount of the unpaid annual withdrawal liability payments, plus accrued interest, if any, in whole or in part without penalty. ERISA § 4219(b)(4).

IX.    Defaults. (ERISA § 4219(c)(5))

    In the event of a default, the Plan may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made.

3

Subject to PBGC Regulation § 4219.33, the term "default" shall mean:

    A.    The failure of an employer to make, when due, any withdrawal liability payment, if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure, and

    B.    Any of the following events which indicate a substantial likelihood that an employer will be unable to pay its withdrawal liability:

    i.    employer going out of business;

    ii.    employer filing for bankruptcy;

    iii.    employer's insolvency, or any assignment by the employer for the benefit of creditors;

    iv.    employer's failure or inability to pay its debts as they become due;

    v.    employer undergoing liquidation or dissolution;

    vi.    sale of the assets of the employer;

    vii.    an employer's statement that it is unable to pay;

    viii.    a review of employer's financial records which indicate an inability to pay;

    ix.    a delinquent first installment payment, followed by a failure of the employer to respond within ten (10) days to a written demand for payment;

    x.    any delinquency to the Plan during the year prior to the employer's withdrawal which was not paid or protested in writing within 30 days after the Plan's first demand for the delinquent payment (unless the Board in its sole discretion concludes that such event does not, in fact, indicate the substantial likelihood of default); or

    xi.    any other event which the Board reasonably concludes impairs the employer's credit worthiness or the employer's ability to pay its withdrawal liability.

    X.    <u>Arbitration</u> (ERISA § 4221)

    A.    <u>Exclusive Remedy</u>.  Any dispute between an employer and the Plan concerning a determination of withdrawal liability can only be resolved by arbitration.

    B.    <u>Initiating Arbitration</u>.  Either party may initiate the arbitration proceeding (not merely request arbitration) within 60 days after the earlier of:

    (1)    the date of notification to the employer under the review provisions of VII.B; or

    (2)    120 days after the date of the employer's request for review under VII.A.

4

  C. <u>Joint Initiation</u>.  The parties may jointly initiate arbitration within 180 days after the date of assessment under VII.

  D. <u>Rules of Arbitration</u>.  Arbitration proceedings shall be conducted in accordance with Part 4221 of the PBGC regulations, § § 4221.1 through 4221.14, and the American Arbitration Association Multi-Employer Pension Plan Arbitration Rules for Withdrawal Liability Disputes.  Provided, however, that arbitrations shall take place at a location within the judicial district of the United States District Court for the Northern District of California, unless the parties mutually agree otherwise.

  E. <u>Presumption of Correctness</u>.  Any determinations made by the Plan with respect to the calculation and assessment of withdrawal liability are presumed to be correct unless the party contesting the determination shows by a preponderance of the evidence that the determination was unreasonable or clearly erroneous.

  F. <u>Payments Required During Arbitration</u>.  Assessments shall be paid by an employer in accordance with the schedule of payments until an arbitrator issues a final decision. ERISA § 4221(d).

  G. <u>Late Attempts to Initiate</u>.  Failure to initiate arbitration in a timely manner will constitute a waiver of the right to contest the amount of withdrawal liability.

XI. <u>Collection Actions</u>

  A. <u>Due According to Schedule</u>.  If no arbitration has been initiated pursuant to X., the amounts demanded by the Plan shall be due and owing on the schedule set forth in the assessment by the Plan. ERISA § 4221(b)(1).

  B. <u>Court Jurisdiction</u>.  The Plan may bring a legal action for collection in either state or federal court. ERISA § 4221 (b)(1).

  C. <u>Statute of Limitations</u>.  In general the statute of limitations for collection actions on withdrawal liability is 6 years after the date on which each unpaid payment was due. ERISA § 4301(f).

  D. <u>Recovery Amounts</u>.  In any action to recover withdrawal liability the Plan shall have all the rights it has with respect to delinquent contributions under ERISA §§ 515 and 502(g), including the right to receive:

   (1) the unpaid assessments,

   (2) interest on the unpaid assessments,

   (3) an amount equal to the greater of (a) interest on the unpaid assessments, or (b) liquidated damage of 20% of the unpaid assessments,

   (4) reasonable attorneys' fees and costs, and

   (5) such other legal or equitable relief as the court deems appropriate.

5

## REQUESTS FOR ESTIMATES OF WITHDRAWAL LIABILITY

XII.    Notice of Potential Withdrawal Liability (ERISA § 101(l)).  Requests by a contributing employer for an estimate of withdrawal liability must be in writing. If an employer requests in writing that the Plan make an estimate of the employer's potential withdrawal liability, the Plan shall furnish the employer with notice of the estimated withdrawal liability calculated as if the employer withdrew on the last day of the Plan year preceding the date of the request, and an explanation of how the estimated liability was determined, in accordance with ERISA § 101(l).

XIII.    Limitations on Estimates of Withdrawal Liability (ERISA § 101(l)(3)).  An employer is not entitled to more than one notice of potential withdrawal liability in any 12 month period and the Plan may require the employer to pay a reasonable charge to cover copying, mailing, and other costs of furnishing the notice.

## ABATEMENT OF WITHDRAWAL LIABILITY

XIV.    Abatement (PBGC Reg. § 4207.1 - 4207.10)

An employer that completely withdraws and subsequently reenters the Plan shall have its liability for that withdrawal abated if the employer resumes covered operations under the Plan, and the number of covered hours during the measurement period designated in the regulations after the employer resumes covered operations exceeds 30% of the average number of covered hours for the 2 plan years in which its covered hours were the highest within the 5 plan years immediately preceding the year of complete withdrawal.

To have liability abated, an employer must apply to the Plan by the first scheduled withdrawal liability payment falling after the employer resumes covered operations, or, if later, the 15th calendar day after the employer resumes covered operations. Upon receipt of proper application the Plan will proceed as required by Part 4207 of the PBGC regulations.

Partial withdrawal liabilities that have been assessed may be abated in accordance with Part 4208 of the PBGC regulations.

*Approved on March 11, 2014:*

Chair                                         Secretary

6

**EXHIBIT C**
*Automotive Industries Pension Trust Fund*
Request for Information Under ERISA §4219(a)

| | |
|---|---|
| **Date:** | **August 19, 2019** |
| **Withdrawn Employer(s):** | **Pearson Automobile Company, Inc. ("Pearson")** |
| **Relevant Time Period:** | **January 1, 2014 – Present** |

Please furnish information and documents requested below **within 30 days** of the date of this request pursuant to ERISA § 4219(a). The term "Withdrawn Employer(s)" means the employer (or employers) identified above, and requests for information or documents concerning Withdrawn Employer(s) apply to each of them individually and to all of them collectively. If a request is inapplicable, please specify the reason (i.e. shareholder documentation inapplicable because the Withdrawn Employer is a partnership).

1.      If the Withdrawn Employer(s) is a corporation, provide the Articles of Incorporation and documentation identifying each shareholder of the Withdrawn Employer(s) and the respective interests held by each shareholder in the corporation during the Relevant Time Period, including but not limited to stock certificates, stock registries and Form 1120 - Schedule K-1 from corporate tax returns.

2.      If the Withdrawn Employer(s) is an LLC, provide the Operating Agreement and documentation identifying each member of the Withdrawn Employer(s) and the respective interest held by each member in the limited liability company (LLC) during the Relevant Time Period, including but not limited to Form 1065 – Schedule K-1 from LLC tax returns.

3.      If the Withdrawn Employer(s) is a partnership, provide the Partnership Agreement and documentation identifying each partner of the Withdrawn Employer(s) and the respective interest held by each of them in the partnership during the Relevant Time Period, including but not limited to Form 1065 – Schedule K-1 from partnership tax returns filed during the Relevant Time Period.

4.      If the Withdrawn Employer(s) is a proprietorship or other type of entity not identified in Request Nos. 1-3 above, identify all persons or entities that had an ownership interest in the Withdrawn Employer(s) during the Relevant Time Period, and provide all documents specifying the respective interests held by each Owner at any time during the Relevant Time Period.

5.      Identify all fictitious business names used by the Withdrawn Employer(s) at any time during the Relevant Time Period.

6.      Provide the addresses for all locations where the Withdrawn Employer(s) conducted business at any time during the Relevant Time Period, and all lease agreements for such locations.

7.      Identify any other trades and/or businesses in which any owner identified in response to Request Nos. 1-4, above, held an interest and the respective interest held by each of them in the trades and/or businesses at any time during the Relevant Time Period. Please note that a trade or business includes corporations, LLCs, partnerships, sole proprietorships, joint ventures, trusts, and

EXHIBIT C – p. 1

**EXHIBIT C**
*Automotive Industries Pension Trust Fund*
**Request for Information Under ERISA §4219(a)**

real estate holdings (other than an owner's primary residence). If any trusts are identified in response to this request, please name the trustee, grantor and beneficiaries of each trust.

8.      With respect to the trades and/or businesses identified in response to Request No. 7, above, identify those trades and/or businesses that have or had an obligation to contribute to the Automotive Industries Pension Plan and the time period during which they had the obligation to contribute.

9.      Describe each sale, transfer, assignment, or change in ownership involving the Withdrawn Employer(s) or any trades and/or businesses identified in response to Request No. 7, above, during the Relevant Time Period.

10.      Describe, by address and type of property, all real property in which Withdrawn Employer(s), any owner identified in response to Request Nos. 1-4, above, or any trade or business identified in response to Request No. 7, above, had or has a financial interest, including as a beneficiary of a trust, during the Relevant Time Period.

11.      Provide each lease agreement relating to any real property in which the Withdrawn Employer(s) or any trades and/or businesses identified in response to Request No. 7, above, was the owner, landlord, lessor, tenant, lessee, subtenant, or sublessee during the Relevant Time Period.

12.      Provide all contracts or agreements, including loan agreements, between the Withdrawn Employer(s) and any of their owners (and/or his/her spouse, child, parent, grandparents) identified in response to Request Nos. 1-4, above, in effect at any time during the Relevant Time Period, including all addendums and amendments thereto.

13.      Provide all documents relating to loans made to the Withdrawn Employer(s) that remain or remained outstanding during the Relevant Time Period including, without limitation, promissory notes, documents evidencing payments thereon, loan schedules reflecting interest assessed, and written agreements by persons or entities other than the Withdrawn Employer(s) to repay/guarantee such loans.

14.      Provide federal income tax returns for the Withdrawn Employer(s) for the Relevant Time Period, including all supporting schedules, statements, forms, attachments, supplements, and/or amendments.

15.      Provide federal income tax returns for each trade or business identified in response to Request No. 7, above, for the Relevant Time Period and continuing to the present, including all supporting schedules, statements, forms, attachments, supplements, and/or amendments.

16.      Provide the financial statements, audited (or unaudited if there are no audited statements), for the Withdrawn Employer(s) for the Relevant Time Period.

EXHIBIT C – p. 2

## EXHIBIT C
### *Automotive Industries Pension Trust Fund*
### <u>Request for Information Under ERISA §4219(a)</u>

17.     Provide the Withdrawn Employer(s) accounting records for the Relevant Time Period, including but not limited to the general ledger, trial balance, accounts payable journal, cash disbursements journal, and bank statements.

18.     Indicate whether the Withdrawn Employer(s) have sold or transferred any assets valued in excess of $20,000 at any time during the Relevant Time Period, or intend to sell or transfer any assets at any time within the next twelve (12) months.  If so, please provide an itemized list of all such assets and a copy of the purchase agreement.

19.     Indicate whether the Withdrawn Employer(s) have filed for bankruptcy, made an assignment for the benefit of creditors, merged, or otherwise liquidated or dissolved during the Relevant Time Period. If not, indicate whether the Withdrawn Employer(s) intend to file for bankruptcy, make an assignment for the benefit of creditors, merge, or otherwise liquidate or dissolve within the next twelve (12) months.

20.     Identify all persons or entities that provided professional services, including but not limited to accountancy, tax and legal services, to the Withdrawn Employer(s) during the Relevant Time Period.

<u>**Note**</u>: In the event sufficient information and documentation requested above is not timely provided, the Plan may assert claims against the Withdrawn Employer(s) for violating ERISA § 4219(a) and seek a Court order to compel compliance and an award of attorneys' fees and costs incurred as a result pursuant to ERISA §§ 502(g) and 4301(e).

EXHIBIT C – p. 3